UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

VIRGIE EARL,

          Plaintiff,

         v.                                  Case No. 04-C-0072

JO ANNE B. BARNHART,
Commissioner of Social Security,

          Defendant.

---

DECISION AND ORDER REVERSING AN REMANDING THE DECISION
OF THE COMMISSIONER

---

On April 17, 2001, the plaintiff applied for Supplemental Security Income under Title II of the Social Security Act, 42 U.S.C. §§ 402(e), 405(g) (Act). (R. at 16.) Initially, she was scheduled to appear before ALJ Margaret J. O'Grady on November 19, 2002, for a disability hearing. (*Id.* at 24.) But because the plaintiff was in the hospital and unable to attend the hearing, the ALJ had to continue it until December 18, 2002. (*Id.*)

The plaintiff appeared at the December 18, 2002, hearing without counsel. (*Id.* at 27-29.) The ALJ elected to proceed then issued a decision on August 25, 2003, denying the plaintiff's application. (*Id.* at 16-21.) The plaintiff exhausted her administrative review options and that process produced the same results. Consequently, the ALJ's decision became the defendant's final decision on December 12, 2003. (*Id.* 6-7.) As a result, the plaintiff seeks judicial review of the decision denying her application for DIB benefits.[1]

---

[1] On January 16, 2004, the plaintiff reapplied for benefits. (Reply at 1.) The defendant approved her second application and found that she had been disabled from January 16, 2004. (*Id.*) Accordingly, the plaintiff moves the court for a finding of disability from her initial application date of April 9, 2001, to January 15, 2004. (*Id.*)

## I. Relevant Factual Information

### A. The Plaintiff's Disability Claim

The plaintiff, who was born on October 25, 1968, claims she became disabled on December 13, 1999, due to fibromyalgia syndrome, obesity, hyperthyroidism, Graves disease, cellulitis, left great toe fracture, chronic back pain, hydrocephalus, tendonitis of the right shoulder, migraine headaches and urticaria. (R. at 17, 20, 31-33, 81, 100, 132; Pl.'s Br. at 1; Def.'s Br. at 3-4.) The plaintiff reports excessive fatigue and that she is sleepy throughout the day. (*Id.* at 102, 113-14.)

Joselito Baylon, M.D., the plaintiff's treating physician, notes "very poor sleep" and "fatigue" (*Id.* at 217), while the plaintiff's rheumatologist, Paul Halverson, M.D., advises that the plaintiff is "sleepy" and "sleeps during the day." Maqbool Arshad, M.D., of the Milwaukee Sleep Disorder Center, submits that the plaintiff is "excessively sleepy during the day. She is tired and excessively sleepy and easily falls asleep on sitting quietly." (*Id.* at 290.) Moreover, Dr. Arshad states that the plaintiff's "daytime sleepiness is quite severe and her Epworth sleepiness score is 20, which is quite severe." (*Id.* at 234.)

At various stages in her medical treatment for pain, the plaintiff has taken Naproxen, Amitryptaline, Ultram, Tylenol # 3, Percocet, Cyclobenzaprine, Soma, Darvocet, Norflex, and Ibroprofen. (R. at 96, 129, 132, 145, 153, 159, 229, 241.)

At five feet four inches, the plaintiff reports that her weight fluctuates between 218 and 225 pounds. (*Id.* at 29, 90.) She attributes the swelling of her feet and ankles and the difficulty putting on her shoes to obesity. (*See id.* at 107, 203, 205.) Lastly, to perform basic living activities, like shopping, cleaning chores, cooking and laundry, the plaintiff contends that she receives help from her family members. (*Id.* at 33-34, 101, 108, 113, 122.)

2

### B. The November 19, 2002 Hearing

On November 19, 2002, the plaintiff's mother appeared and advised the ALJ that the plaintiff was in the hospital undergoing treatment for brain swelling. (*Id.* at 24.) The plaintiff's mother explained to the ALJ that she did not know how long her daughter would remain in the hospital. (*Id.*) In response, the ALJ responded that she would continue the hearing until December 18, 2002. (*Id.* at 25.)

Before adjourning the hearing, the ALJ asked the plaintiff's mother to sign the Order rescheduling the hearing and the Notice of Hearing on her daughter's behalf. (*Id.*) The plaintiff's mother agreed to sign the forms. (*Id.*) Thereafter, the ALJ explained to the plaintiff's mother, that

> [t]here are various attorneys and representatives that can handle her case if she wants to have an attorney or representative, and we'll give you a list of legal services groups. She needs to make the arrangements for representation at this point. She needs to show up at the hearing with or without an attorney. I won't give another continuance to obtain representation. She should have – this gives her almost a month to obtain representation. If she does not have an attorney or representative, we'll go ahead with the hearing at that point with her acting on her own behalf. I'll have a vocational expert here again at that time like I have a vocational expert today. She can also contact any private attorney or representative. They can take the case on what's called a contingency fee arrangement, and that's where the attorney or representative would take a percentage of any back benefits that are paid. There is a maximum amount that's allowed by law, and any fee would need to be approved by an Administrative Law Judge. But it's up to her to make the arrangements for the representation.

*(Id.* at 25-26.)

### C. The December 18, 2002 Hearing

3

The plaintiff appeared at the December 18, 2002, hearing twenty minutes late. (*Id.* at 26.) The ALJ advised the plaintiff that she would grant her "extreme lenience" by letting the hearing go forth. (*Id.* at 27.) Then the following exchange between the ALJ and the plaintiff occurred:

> ALJ: . . . . Ma'am, you were here, or at least your mother was here back in November, and I told her that I would continue the case until today to give you time to obtain an attorney or representative.
>
> CLMT: And now I have to go back into the hospital again because my speech is messed back up again.
>
> ALJ: Have you obtained an attorney or representative to handle your case?
>
> CLMT: No, I didn't.
>
> ALJ: We'll go ahead with the hearing then today with you acting on your own behalf.

(*Id.* at 27-28.) After the ALJ finished questioning the plaintiff, a vocational expert, John R. Schraeder, testified. (*Id.* at 37-39.) Although the ALJ gave the plaintiff the option of questioning Schraeder, the plaintiff did not ask him any questions. (*Id.* at 39.)

## II. ALJ O'Grady's Findings

The ALJ made the following eight findings in her August 25, 2003, decision.

1. The claimant did not engage in any substantial gainful work activity after filing her application for benefits.

2. The medical evidence establishes the claimant has severe fibromyalgia, hyperthyroidism, Grave's disease, cellulitis, left great toe fracture, obesity, chronic back pain, hydrocephalus, right shoulder tendonitis and urticaria, but does not have an impairment or combination of impairments listed in

4

or medically equal to one listed in the Listings of Impairments.

3. When the claimant's complaints and allegations about her limitations and impairments are considered in light of all the objective medical evidence as well as the record as a whole, they do not reflect an individual who is so impaired as to be incapable of engaging in any substantial gainful work activity.

4. The claimant has the residual functional capacity to perform light work that does not require more than occasional climbing.

5. The claimant is a younger individual with a limited education.

6. The claimant has no past relevant work.

7. Considering the claimant's vocational factors in light of the testimony of the vocational expert and the framework of vocational Rule 202.17, the claimant is "not disabled."

8. The Claimant is not under a "disability: as defined in the Social Security Act and is not eligible for supplemental security income benefits under the provisions of Section 1614(a)(3).

(*Id.* at 20.)

### III. Summation of the Parties' Arguments

In support of the conclusion that the court should reverse the defendant's decision and award her benefits, or alternatively remand the case for further proceedings, the plaintiff offers seven errors committed by the ALJ and the defendant.

1. Ms. Earl's waiver of counsel was invalid.

2. Social Security has not met its burden of proof that the ALJ "scrupulously and conscientiously" developed the Record with respect to obtaining

5

>              medical opinions or developing the plaintiff's
>              testimony.
>
> 3.    The ALJ failed to properly assess the opinions of
>       Ms. Earl's treating physician, Dr. Baylon.
>
> 4.    The ALJ's finding that Ms. Earl can perform light
>       work is not supported by any medical opinion and
>       is not supported by substantial evidence.
>
> 5.    The lay ALJ impermissibly plays doctor by
>       interpreting bare clinical findings.
>
> 6.    The ALJ improperly misconstrues Ms. Earl's
>       activities of daily living and ignores activities that
>       detract from the ALJ's conclusions.
>
> 7.    The ALJ failed to properly evaluate the credibility of
>       Ms. Earl's testimony.

(Pl.'s Br. at 3-4.) Relying on the sixth sentence of § 405(g), the plaintiff submits that newly and material evidence warrants a remand.

The defendant responds by contending that the plaintiff's appearance without counsel did not prejudice her because the ALJ fully and fairly developed the record. (Def.'s Br. at 5-6.) Also, the defendant submits that the record contains substantial evidence to support the ALJ's findings that the plaintiff could perform a significant number of jobs. (*Id.* at 6-8.) Lastly, the defendant contends that the plaintiff failed to demonstrate that the new evidence upon which she offers to support her remand is new, material and that good cause exists for the failure to make such evidence part of the prior record. (*Id.* at 8-10.)

6

## IV. Standard of Review

To obtain disability benefits under the Social Security Act, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has adopted a sequential five-step test for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4).

> Under this test, the ALJ must determine:
>
> (1) Whether the claimant is currently engaged in substantial gainful activity ("SGA");
>
> (2) If not, whether the claimant has a severe impairment;
>
> (3) If so, whether the claimant's impairment(s) meets or equals one of the impairments listed in the Administration's regulations as being so severe as to preclude SGA;
>
> (4) If not, whether the claimant can perform her past relevant work;
>
> (5) If not, whether the claimant can make the adjustment to other work.

*Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

If the claimant makes the necessary showing at steps one through three, she will be found disabled. If the impairment is not of such severity as to be presumptively disabling, the ALJ must consider whether the claimant possesses the residual functional capacity (RFC) to perform past work. If not, the burden shifts to the Secretary to demonstrate that the claimant can successfully perform a significant number of other jobs that exist in the national economy. *Young*, 362 F.3d at 1000.

7

Under § 405(g), the district court's review is limited to determining whether the ALJ's decision is supported by "substantial evidence" and based on the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). The ALJ's findings of fact, if supported by substantial evidence, are conclusive. *Id.* Substantial evidence is such relevant evidence as a reasonable person could accept as adequate to support a conclusion. *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). If the ALJ commits an error of law, however, reversal is required without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ commits such an error if she fails to comply with the Commissioner's regulations and rulings. *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991).

## VII.  Discussion

A claimant has a statutory right to counsel at a disability hearing. 42 U.S.C. § 406; 20 C.F.R. 404.1700. If properly informed of this right, the claimant may waive it. *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991). The claimant may waive that right if the ALJ first explains: (1) the manner in which an attorney can aid in the proceedings; (2) the possibility of free counsel or a contingency arrangement; and (3) the limitation on attorney's fees to twenty-five percent of past-due benefits and required court approval of the fees. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994). The ALJ must specifically state that attorney's fees are limited to twenty-five percent of the past due benefits. *Id. at 245; see Castrejon v. Apfel*, 131 F.Supp.2d 1053, 1056 (E.D. Wis. 2001). Simply stating an unspecified amount is not enough because a claimant may believe that a higher percentage could apply. *Wirth v. Barnhart*, 318 F. Supp. 726, 739 (E.D. Wis. 2004).

8

However, finding a waiver of counsel invalid does not automatically require a reversal. *Binion*, 13 F.3d at 245. Rather, the burden shifts to the Commissioner to show that the ALJ developed the record adequately. *Id.* The Commissioner must prove that the ALJ scrupulously and conscientiously probed, inquired of, and explored all relevant facts. *Id.* If the Commissioner meets the burden, a claimant has an opportunity to rebut this showing by demonstrating prejudice, by proving that the ALJ did not elicit all of the relevant information from the claimant, or by demonstrating an evidentiary gap. *Id.*

To determine whether an ALJ's development of the record qualifies as "full and fair," the Seventh Circuit Court of Appeals has considered a number of factors, including: (1) whether the ALJ obtained all of the claimant's medical and treatment records; (2) whether the ALJ elicited detailed testimony from the claimant at the hearing (probing into relevant areas, including medical evidence on the record, medications, pain, daily activities, the nature of all physical and mental limitations, etc.), and (3) whether the ALJ heard testimony from examining or treating physicians. *See, e.g., Binion*, 13 F.3d at 245 (outlining the ALJ's actions in *Binion*, which did qualify as full and fair development of the record). Although there is no hard and fast standard that delineates what is full and fair development of the record, "'a significant omission is usually required before this court will find that the Secretary failed to assist pro se claimants in developing the record fully and fairly.'" *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir.1997).

Here, the record respecting the plaintiff's statutory right to counsel is quite disturbing. By the express terms of the statute, the claimant has a right to counsel at the disability hearing, which means that such a right belongs to the claimant and can only be waived by the claimant. *See* 42 U.S.C. § 406; 20 C.F.R. 404.1700. Alternatively and

9

consistent with the regulations, the claimant can appoint a third-party to deal with the Administration. *Id.* Through this appointment, a third-party, on the claimant's behalf, can waive the claimant's statutory right to counsel. *Id.*

Aside from recognizing the familial relationship of the plaintiff and her mother, the ALJ made no attempt on November 19, 2002, to determine whether the plaintiff had appointed her mother to represent her at the hearing. While the court must infer that the plaintiff's mother appeared at the hearing at the plaintiff's request to advise the ALJ that the plaintiff was in the hospital, such an inference cannot be made with respect to whether the plaintiff appointed her mother in a legal capacity to act on her behalf at the hearing. Absent such an appointment, the plaintiff's mother could not waive the claimant's statutory right to counsel or sign any papers on her behalf. Morever, because the plaintiff was thirty-five at the time of the hearing and there is no suggestion or indication that the plaintiff's mother was her legal guardian, the mother cannot exercise an exclusive right of the claimant.

But even if the plaintiff gave her mother authorization to act on her behalf at the November 19, 2002, hearing, the ALJ still failed to properly inform the plaintiff of her right to waive counsel. In other words, the ALJ did not comply with the Seventh Circuit's directive in *Binion*. A review of the ALJ's statement to the plaintiff's mother reveals that she did not explain (1) the manner in which an attorney could aid the plaintiff in the proceedings; (2) the possibility of the plaintiff obtaining free counsel or securing counsel by executing a contingency agreement; and (3) the limitations on attorney's fees to twenty-five percent of past-due benefits and the requirement that a court must approve the fees. Instead, the ALJ simply stated that

10

> [t]here are various attorneys and representatives that can handle her case if she wants to have an attorney or representative, and we'll give you a list of legal services groups. She needs to make the arrangements for representation at this point. She needs to show up at the hearing with or without an attorney. I won't give another continuance to obtain representation. She should have – this gives her almost a month to obtain representation. If she does not have an attorney or representative, we'll go ahead with the hearing at that point with her acting on her own behalf. I'll have a vocational expert here again at that time like I have a vocational expert today. She can also contact any private attorney or representative. They can take the case on what's called a contingency fee arrangement, and that's where the attorney or representative would take a percentage of any back benefits that are paid. There is a maximum amount that's allowed by law, and any fee would need to be approved by an Administrative Law Judge. But it's up to her to make the arrangements for the representation.

*(Id.* at 25-26.)

Notwithstanding that the information the ALJ conveyed to the plaintiff's mother is inconsistent with *Binion's* requirements, the plaintiff's appearance at the December 18, 2002, hearing presented the ALJ with an opportunity to advise the plaintiff of her statutory right to counsel properly and to inquire whether she wished to waive that right. But no such dialogue occurred because the ALJ did not seize that opportunity. The ensuing discussion was as follows:

| | |
|---|---|
| ALJ: | . . . . Ma'am, you were here, or at least your mother was here back in November, and I told her that I would continue the case until today to give you time to obtain an attorney or representative. |
| CLMT: | And now I have to go back into the hospital again because my speech is messed back up again. |
| ALJ: | Have you obtained an attorney or representative to handle your case? |
| CLMT: | No, I didn't. |

11

| ALJ: | We'll go ahead with the hearing then today with you acting on your own behalf. |

(*Id.* at 27-28.) Because the plaintiff was never informed of her right, which inevitably means that the ALJ never inquired whether the plaintiff wanted to waive this right, the court cannot conclude that the plaintiff waived her statutory right to counsel.

Furthermore, the court is not persuaded that the ALJ fully and fairly developed the record. The December 18, 2002, transcript is fourteen pages and only three pages address the plaintiff's health problems. (Id. at 31-33.) More troubling is that the questions that appear on those three pages are at best perfunctory. (*Id.*) The ALJ failed to ask any direct questions about the plaintiff's fibromyalgia, hyperthyroidism, Grave's disease, cellulitis, left great toe fracture, obesity, chronic back pain, hydrocephalus, right shoulder tendonitis, sleeping patterns, and urticaria. However, the ALJ did ask questions about the hospital stay that prevented the plaintiff from attending the last hearing, how much she weighed and about her arthritic legs. (*Id.* at 28-29, 31-32.) But these questions did not even begin to scratch the surface of the medical ailments that the plaintiff says are disabling.

With respect to the plaintiff's claims of pain, the questions concerning location and frequency were brief. (*Id.* 31-32.) There were no questions regarding the intensity of the pain in her head and arthritic legs, nor questions about the dosage or side effect of the Naproxen that the plaintiff reports she takes for pain. (*Id.*)

Notwithstanding these failures, the ALJ disregarded a number of the Administration's rulings. It appears that the ALJ never considered the effects of the plaintiff's obesity on the other reported impairments, particularly since all the medical evidence in the record stated repeatedly that the plaintiff is obese and SSR 02-1p notes that "[o]besity can

cause limitation of function." SSR 02-1p ¶8. Despite the directives of Social Security Regulations, especially SSR 96-8p and SSR 96-2p, that the ALJ give the opinions of treating physicians controlling weight or articulate their reasons for rejecting such opinions, the ALJ does neither in this case. Indeed, the ALJ does not even address Dr. Baylon's opinions. SSR-96-7p requires ALJs to specify why the claimant's credibility statements were not given weight. Again, the ALJ does no such thing. These errors of law, the court's finding that the plaintiff did not waive her statutory right to counsel and was prejudiced by the absence of counsel, coupled with the omissions in the record which preclude a determination of whether the ALJ's findings are supported by substantial evidence, require reversal of the defendant's decision.

Now, therefore,

IT IS ORDERED that the ALJ's decision is reversed and the court remands this matter for further proceedings consistent with this decision.

Dated at Milwaukee, Wisconsin, this 9th day of September, 2005.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge

---